UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARION MARTINEZ §<br>§<br>　Plaintiff, §<br>§<br>VS. §<br>§<br>MOBILELINK, §<br>§<br>　Defendant. § | <br><br><br><br>CIVIL ACTION NO. 4:20-cv-01149 |

**AGREED MOTION FOR APPROVAL OF FLSA COLLECTIVE SETTLEMENT**

Plaintiff, Marion Martinez, through counsel hereby files this Agreed Motion for Approval of FLSA Collective Settlement, and in support states:

**I.     Introduction**

This memorandum supports a motion to approve a settlement under the Fair Labor Standards Act (FLSA) for a collective of 370 non-exempt classified Assistant Managers who allege that they worked overtime hours for Defendant off the clock and were not paid for those overtime hours. *See* ECF No. 1 (Complaint).  The analysis demonstrates that the proposed settlement is fair, reasonable, and consistent with the statutory and judicial standards governing FLSA collective actions in the Fifth Circuit. *See, e.g.*, *Plunkett v. Firstkey Homes LLC*, Case No. 3:23-cv-2684-L-BN, 2024 U.S. Dist. LEXIS 22496, *28-29 (N.D. Tex. November 21, 2024) (approving FLSA settlement on behalf of putative collective of  employees); *Wolfe v. Anchor Drilling Fluids USA Inc.*, No. 4:15-CV-1344, 2015 U.S. Dist. LEXIS 182835, *4-5 (S.D. Tex. Dec. 7, 2015) (this Court, approving settlement of FLSA and Rule 23 classes in wage claim dispute); *Camp v. Progressive Corp.,* Case No. 01-2680, 2004 U.S. Dist. LEXIS 19172, *70-71 (E.D. La. September 23, 2004) (approving settlement of  FLSA claims of a previously

conditionally certified collective of claimants). The Parties respectfully request that the Court approve the settlement as set forth herein.

## II.  Background

Plaintiff originally reached out to Defendant, through counsel, by letter dated December 12, 2019, generally explaining his claims of FLSA violations against Defendant and expressing his interest in settling the claims pre-suit. Plaintiff's letter further stated his intent to file the claims in the event the parties would not be able to reach a resolution. Defendant declined Plaintiff's invitation to participate in pre-suit settlement negotiations. Plaintiff filed this case on March 31, 2020, as a proposed collective action on behalf of non-exempt classified Assistant Managers ("AM") who worked at Defendant's wireless telecommunications retail stores. ECF No. 1. By May 20, 2020, Plaintiff was joined by eight other opt-in plaintiffs. ECF Nos. 6, 13. Shortly thereafter, on August 10, 2020, the parties attended mediation with Michael L. Russell who has a nationwide reputation as a knowledgeable and effective wage and hour collective and class action mediator. The parties were unable to reach an agreement at the mediation, and on August 25, 2020, Plaintiff filed his Motion to conditionally certify this collective action. ECF No. 18.

On October 15, 2020, this Court entered its order conditionally certifying this matter as a collective action and directing that notice be issued to putative collective members. ECF No. 37. After the Court approved the parties' agreed form of notice, the notice was sent to 1,606 potential collective members. ECF No. 40 (Notice of Sending Notice). Opt-ins joined during the ensuing notice period, with Plaintiff forming a collective of 370 AMs. *See* ECF Nos. 41-50 (Notices of Filing Consent to Join Forms). The parties then attended a second mediation conference with William H. Lemons, another mediator with extensive FLSA settlement experience, on April 28, 2022, but were unable to resolve their dispute.

On July 20, 2023, the Court issued an order setting yet another mediation in this case for August 9, 2023, with Judge Dena Hanovice Palermo. The parties were unable to reach an Agreement at the Settlement Conference, but subsequently reached an agreement in principle as to the settlement amount payable to the participating collective members. The parties could not agree, however, as to an appropriate amount for attorneys' fees. Initially, the parties had agreed to submit the settlement amount for the participating opt-ins to the Court, and then have the Court determine the fee award payable to Plaintiff's counsel. However, the parties continued to work diligently to separately resolve the fees and costs, and ultimately reached the agreement for which the parties seek approval herein.

### III.   The Settlement

A copy of the parties' Joint Stipulation of Settlement and Release is attached hereto as Exhibit "1." The Agreement provides for payment of $56,000 to 370 Opt-In Plaintiffs who joined this matter at the time it was filed or thereafter, and provides compensation for workweeks during the FLSA's extended three-year limitations period. Given the facts of this case, the number of workweeks at issue, and the nature of the claims asserted, this settlement represents a positive recovery for the opt-in Plaintiffs. Though the settlement amount may seem modest on its face, it is a fair resolution given that time records and evidence in this case indicate that that alleged off-the-clock work would trigger an unpaid overtime claims under the FLSA in a relatively small number of workweeks worked by AMs.

The Settlement also provides for a separately negotiated $70,000 to Plaintiff's counsel as attorneys' fees and costs, representative of a significant compromise and well below Plaintiff's counsel's lodestar to date. Finally, the Settlement Agreement provides for a $4,000 service award to Named Plaintiff, Marion Martinez. The Settlement Agreement attached to this motion has

already been agreed upon and executed by the Parties. For all the reasons set forth below and in the supporting documents, the settlement is fair, reasonable, and adequate. The Parties respectfully request that the Court approve the settlement as outlined herein.

### IV.     Legal Standards/Rules

The decision to approve a class action settlement is left to the district court's sound discretion. *See Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004). Courts in the Fifth Circuit regularly approve FLSA settlements that are fair and reasonable. *See Cabezas v. Bravura Info. Tech. Sys.*, No. 7:19-CV-00027, 2019 U.S. Dist. LEXIS 244179, *7-8 (S.D. Tex. Dec. 11, 2019) (approving FLSA settlement as fair and reasonable); *Johnson v. Vector Transp. Co.*, 2015 U.S. Dist. LEXIS 166327, *3-4 (N.D. Miss. Dec. 11, 2015) (same). Courts typically rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement to promote the policy of encouraging settlement of litigation. *See Quintanilla v. A & R Demolition, Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *6 (S.D. Tex. May 7, 2008).

Courts routinely approve similar settlements reached in FLSA collective actions. See, e.g., *Plunkett v. Firstkey Homes LLC*, 2024 U.S. Dist. LEXIS 22496 at *28-29 (approving FLSA settlement on behalf of putative collective of employees); *Jasso v. HC Carriers, LLC*, No. 5:20-cv-212, 2022 U.S. Dist. LEXIS 207043, at *1–3 (S.D. Tex. Oct. 19, 2022), adopted by 2022 U.S. Dist. LEXIS 205826 (S.D. Tex. Nov. 14, 2022); *Stanley v. Patriot Inspection Servs.*, No. 6:20-cv-00283-ADA, 2021 U.S. Dist. LEXIS 14028, at *4–5 (W.D. Tex. Jan. 26, 2021) (approving FLSA settlement and certifying a class for settlement purposes); *Munoz v. Ironclad Energy, LLC*, No. 5:19-cv-01251-DAE, ECF No. 15 (W.D. Tex. Sept. 11, 2020) (approving FLSA collective

action settlement and approving distribution of notice to a collective action class that was certified for settlement purposes); *Freeman v. Progress Residential Prop. Manager, LLC*, No. 3:16-cv-00356, ECF No. 170 (S.D. Tex. Mar. 29, 2019). *Wolfe v. Anchor Drilling Fluids USA Inc.*, 2015 U.S. Dist. LEXIS 182835, at *4-5 (this Court, approving settlement of FLSA and Rule 23 classes in wage claim dispute). Unlike settlements under Fed. R. Civ. P. 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required.

**IV.   Analysis**

    **A.  The Settlement Resolves a Bona Fide and Contested Dispute**

The litigation of the FLSA claims asserted in this case has been strongly contested and reflects a bona fide dispute between the Parties. The case was filed in March 2020, and since filing, the parties have exchanged voluminous amounts of information including surveys directed to each of the 370 Opt-In Plaintiffs, voluminous document and data production, and the exchange of discovery. Counsel are very familiar with the claims and defenses, evidence supporting and refuting each, and the parties' positions on all disputed claims and facts.

Defendant claimed numerous defenses to Plaintiffs' claims, including that the AMs did not work off the clock, that AMs did not work a sufficient number of hours in a significant number of workweeks in which off the clock work would result in unpaid overtime; that Plaintiffs were properly compensated for hours worked, that Plaintiffs were not entitled to liquidated damages, and that Defendant paid them in good faith based on the number of hours recorded thereby reducing the limitations period to two years. Defendant also intended to seek decertification of the conditionally certified collective, which would have resulted in each opt in having to file

their own individual claims for overtime compensation.[1] Defendant opposed Plaintiffs' motion for conditional certification, and once the motion was granted contested the contents of the proposed notice, all of which resulted in extensive briefing of the relevant issues. Throughout this litigation, the claims in this matter have been strongly contested at every turn, reflecting a bona fide dispute. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353.

    **B. Fairness and Reasonableness of the Settlement**

The proposed settlement is consistent with the Fifth Circuit's requirement that FLSA settlements be fair and reasonable. *See, e.g.*, *Plunkett*, 2024 U.S. Dist. LEXIS 22496, *28-29 (approving FLSA settlement on behalf of putative collective of employees as fair and reasonable); *Wolfe*, 2015 U.S. Dist. LEXIS 182835, *4-5 (same); *Camp*, 2004 U.S. Dist. LEXIS 19172, *70-71 (same). For the reasons set forth herein, the Court should approve the parties' Settlement of this FLSA collective action.

    ***1. The Agreement Is the Product of Arms-Length Negotiations By Experienced Counsel***

This settlement was the product of extensive arm's-length negotiations taking place beginning prior to the filing of the lawsuit, throughout the pendency of the litigation, through three separate mediation sessions, and continued negotiations thereafter. The parties were all represented by experienced counsel. The Settlement: (1) provides immediate relief to Plaintiffs; and (2) eliminates the inherent risks both sides would bear if this had continued to resolution on the merits, including the risks of decertification and any appeals that may follow. The Parties initially engaged in a mediation with a qualified mediator with extensive experience in FLSA

---

[1] This Court conditionally certified a collective in this action, ECF No. 37, prior to the Fifth Circuit's decision in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), eliminating conditional certification and decertification, and setting a new procedure and standard by which FLSA collectives would be certified in this Circuit. At a minimum, Defendant would request that this Court require Plaintiff and Opt-In to satisfy the standard set forth in *Swales*.

actions, Michael L. Russell, a second mediation with similarly experienced mediator William H. Lemons, and a third mediation with the assistance of Judge Dena Hanovice Palermo. The mediation sessions paved the way for the parties to ultimately achieve the Settlement for which they seek approval. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See, e.g.*, *Lynn's Food Stores, Inc.*, 679 F.2d at 1354; *see also Plunkett*, 2024 U.S. Dist. LEXIS 22496, *8-9 (finding that settlement reached by the parties following post-mediation continued negotiations was indicative of arms-length negotiations, thereby favoring a finding of a fair and reasonable agreement). The arms-length negotiations, together with the other factors set forth herein, establish this Settlement as fair and reasonable.

   2. *The Amount of the Settlement Is Reasonable*

The settlement brings the Plaintiffs monetary value now, not years from now, and provides certainty about the outcome. Although the maximum possible award at trial is larger than the settlement amount, the inquiry as to whether a settlement is reasonable examines the benefits of the settlement in light of the risks of establishing liability and damages. *See*, *e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (affirming a district court's approval of a settlement after properly comparing the settlement amount and "the likely rewards the class would have received following a successful trial of the case"); *Diaz v. Panhandle Maint., LLC*, No. 2:18-cv-097-Z, 2020 U.S. Dist. LEXIS 21482, at *10 (N.D. Tex. Feb. 6, 2020) (approving FLSA collective action settlement as a reasonable alternative to an "expensive trial"); *Lee v. Metrocare Servs.*, No. 3:13-cv-2349-O, 2015 U.S. Dist. LEXIS 194001, at *17–18 (N.D. Tex. July 1, 2015) (noting that, while plaintiffs' maximum recovery could be higher than the settlement amount, the settlement provided immediate relief to plaintiffs); *Tittle v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 228 F.R.D. 541, 556 (S.D. Tex. 2005) (approving a settlement

amount below the possible recovery amount); *Quintanilla*, 2008 U.S. Dist. LEXIS 37449, at *13–14 (finding settlement of FLSA claims for a percentage of the claimed damages to be reasonable in light of uncertainties involved in the litigation).

Here, the 370 participants in this Settlement worked a total of 16,702 during the three-year period. The data exchanged between the parties, however, establishes that in approximately 68% of those weeks the participants worked less than a full forty-hour workweek, and thus off-the-clock work would not trigger an obligation to pay overtime pursuant to the FLSA. Accordingly, only about 5,330 workweeks would have triggered overtime pay under the FLSA. This settlement confers a payment of approximately $10.50 for each overtime week worked. This is the equivalent of approximately 32 minutes for each week. The compensated weeks include the third year of limitations available only when plaintiffs establish that the defendant's violation was willful. *See*, 29 U.S.C. § 255(a) (establishing the limitations period for FLSA actions). Although Defendant's vehemently dispute that it committed any violation, let alone a willful violation, Plaintiff's were able to procure a settlement inclusive of the third year for settlement only. In the absence of the third year, 87 of the participants in this settlement would have lost their claims in their entirety.

### 3. The Expense, Complexity and Duration of Further Litigation Favor Approval

This case is complex and carries significant risks for the Parties as to both legal and factual issues. If Plaintiffs were to survive a decertification motion and prevail at trial, Defendant could appeal the verdict leading to further expenses and uncertainty, as well as continued litigation for several years. Post-trial litigation could consume at least another two or three years before there would be finality in this litigation which began in 2020 as the COVID pandemic was beginning to take its toll on the world. In the event of decertification of this action or other ruling that could

prohibit the 370 participants in this case from moving forward as a cohesive collective, the participants would be left to start virtually from square one, each having to file and litigate their claims on an individual basis. Such an eventuality would certainly result in the expenditure of substantial time and expense to address these claims. *See, e.g.*, *Lee*, 2015 U.S. Dist. LEXIS 194001, at *15, *17–18 (explaining that the case "involves issues of factual and legal complexity" and "a trial would likely require substantial time and expense in addition to" the significant time and money already expended on the litigation).

### 4. Counsel's Experience and Views Substantiate the Settlement Is Reasonable

The experience of counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the settlement. The involvement of experienced counsel and the fact that the settlement agreement was reached in arm's-length negotiations, after a "long, hard-fought mediation" creates a presumption that the agreement is fair. *Quintanilla*, 2008 U.S. Dist. LEXIS 37449, at *11. Although the Court is not bound by counsels' opinion, their opinion is nonetheless entitled to great weight. *See Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996) (explaining that courts should not substitute their judgment for that of counsel, absent evidence of fraud or overreaching); *Lee*, 2015 U.S. Dist. LEXIS 194001, at *18 (quoting *Cotton*, 559 F.2d at 1330) (explaining that a court "should be hesitant to substitute its own judgment for that of counsel"). This Plaintiff and opt-in in this FLSA litigation are represented by attorneys whose practice is primarily dedicated to wage and hour litigation, and specifically, the litigation of claims under the FLSA. Attorneys Gregg I. Shavitz and Alan L. Quiles combine for over 60 years of litigation experience. Counsel for Plaintiff are very familiar with the facts and law in the case, and have negotiated settlements in other complex FLSA litigation cases, including collective action settlements. As with all the aspects of the litigation,

the settlement negotiations, which included three rounds of mediation, were hard-fought and at arm's-length.

In the view of Plaintiffs' counsel, the settlement provides benefits to the Plaintiffs, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Further, in the extensive experience of lead counsel, when evaluated against the risks and compared with similar litigation, the relief to the AMs is appropriate given the facts and evidence in this case. This settlement is fair, adequate, and reasonable, and should be approved.

### C. The Service Award Is Reasonable and Appropriate

As part of the settlement, the Parties agree that Named Plaintiff Marion Martinez will receive a service award of $4,000. The proposed service award is fair and reasonable. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (stating that courts commonly permit payment to class representatives above the amounts received by class members generally). "When determining [service] awards, courts may consider a variety of factors, including risks to [plaintiffs] in commencing the suit, personal difficulty encountered by [plaintiffs], the amount of time and effort spent by [plaintiffs], and the personal benefit enjoyed by representative as a result of the litigation." *Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *14 (N.D. Cal. Nov. 3, 2009) (citing *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)); *see also Silva v. Tegrity Pers. Servs.*, 986 F. Supp. 2d 826, 838 (S.D. Tex. 2013) (stating that the purpose of service awards is to compensate plaintiffs for specific expenses and sacrifices).

In *Wolfe v. Anchor Drilling Fluids USA Inc.*, the Court approved a $10,000 enhancement award to a class representatives as stipulated by the parties in that case. 2015 U.S. Dist. LEXIS

182835, *8. Further, awards as the one sought here, are warranted when the plaintiffs have spent a significant amount of time assisting counsel and participating in the discovery process. *See, e.g., Guadalupe v. Am. Campus Cmtys. Servs.*, No. 1:16-cv-967-RP, 2020 U.S. Dist. LEXIS 259660, at *7 (W.D. Tex. Oct. 23, 2020) (approving $12,000 service award to named plaintiff in a FLSA collective action due to the plaintiff's "efforts and participation" and "risks . . . incurred in the case"); *Valdez v. Superior Energy Servs., Inc.*, No. 2:15-CV-00144, 2019 U.S. Dist. LEXIS 248904, at *13, *24 (S.D. Tex. Nov. 7, 2019) (approving a $15,000 service award to the lead plaintiff in a FLSA collective action); *In re Lease Oil Antitrust Litig.* (No. II), 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving awards of up to $10,000 per class representative); *Camp v. Progressive Corp.*, No. 01-2680 c/w 03-721, 2004 U.S. Dist. LEXIS 19172, at *23–24 (E.D. La. Sept. 23, 2004) (approving service award to the class representative in the amount of $10,000 and approving $92,000 in additional service awards to other plaintiffs who assisted in discovery).

Named Plaintiffs Marion Martinez was significantly involved in this case by, among other things, assisting in Plaintiff's counsels' fact investigation, identifying potential witnesses, providing information regarding Defendant's workplace and compensation policies, preparing for the three rounds of mediation, and gathering and providing information responsive to Defendant's discovery. Based on these contributions, the requested service awards are fair and reasonable.

### D. The Agreed Requested Fees and Costs Are Reasonable

Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to an award of reasonable attorneys' fees and expenses. After negotiating the amount Defendant would pay to the 370 participants, the Parties separately negotiated Plaintiffs' Counsel's fees and expense, pursuant to which Defendant shall pay attorneys' fees and expenses totaling $70,000.00.

### 1. Because They Were Separately Negotiated After the Parties Settled the Plaintiffs' Wage Claims, the Fees and Costs Are Presumed Reasonable

In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee, noting that "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In this case, the Parties did just that by separately negotiating Plaintiffs' attorney's fees and expenses after they had negotiated the Settlement amount for the Plaintiffs. This weighs in favor of approval because the amount of the Plaintiffs' recovery was not reduced to account for Plaintiff's fees and Plaintiffs' counsel's loyalty to their clients was not undermined by a simultaneous negotiation. *Alvarez v. BI Inc.*, 2020 U.S. Dist. LEXIS 60656, at *19, n. 7 (E.D. Pa. Apr. 6, 2020) ("As a threshold matter, the recovery of attorneys' fees and costs in this case does not create a conflict of interest that could affect Plaintiffs' ultimate recovery. The attorneys' fees and costs were negotiated separately from the substantive terms of the Settlement and do not 'come out of' or 'decrease' the payment to the Opt-In Plaintiffs."). Several courts in this Circuit have approved the settlement of attorneys' fees in FLSA cases when the fees were separately negotiated from the settlement of the FLSA claims. *See, e.g. Kaesemeyer v. Legend Mining USA Inc.*, Civil Action No. 6:17-cv-01520, 2019 U.S. Dist. LEXIS 155913, *8-9 (W.D. La. Aug. 30, 2019) (approving attorneys' fee award in FLSA case representative of a voluntary reduction of earned fees in a good faith compromise, which were negotiated separately and therefore no percentage reduction of the amount paid to the plaintiffs); *Halleen v. Belk, Inc.*, No. 4:16-CV-00055-ALM, 2018 U.S. Dist. LEXIS 214015 (E.D. Tex. Dec. 20, 2018) (approving separately negotiated fees in FLSA post-certification settlement where the fees sought were significantly lower than plaintiffs' counsel's lodestar fees); *Daniels v. Prod. Mgmt. Indus., LLC*,

2018 U.S. Dist. LEXIS 76933, *10-11 (W.D. La. April 20, 2018) (approving attorney fees in FLSA case as reasonable where they are paid separate and apart from the damages to plaintiffs and do not otherwise reduce the payment to plaintiffs). "The lodestar . . . is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993).

Here, the expense and fee award totals $70,000. The case was zealously contested, and the litigation continued for several years. Plaintiff's Counsel's lodestar attorneys' fees in this matter total $481,104.18. This represents 979.7 hours (a blended hourly rate of approximately $491.00). Plaintiff's counsel anticipates the expenditure of additional time, particularly in light of the fact hat Plaintiff's counsel are self-administering the distribution of settlement to save on incurring costs and expenses.

To date, Plaintiff's Counsel's expenses are as follows:

| Expense | Detail | Amount |
|---|---|---|
| Postage and copying | Distribution of surveys to all opt-ins | $255.49 |
| Filing Fee | District Court Clerk | $400.00 |
| Service of Process | We Serve Law | $140.00 |
| Notice Distribution and Services – 1,606 pieces | AB Data | $18,000.00 |
| Mediation 1 | Russell Dispute Resolution | $1,303.50 |
| Mediation 2 | William Lemons | $5,000.00 |
| **TOTAL** | | **$25,098.99** |

Plaintiff's counsel expect to incur approximately an additional $500.00 in expenses for skip-tracing participants' addresses and postage and imaging related to the distribution of settlement checks, bringing the costs to $25,598.99. The costs described are accurate regarding all the expenses incurred; and constitute hard, out-of-pocket monetary expenses from the beginning of

the case. *Id*. Plaintiffs' counsel was aware such costs and expenses might not be recovered and, at the very least, would not be recovered until the litigation was successfully resolved. *Id*.

Once the above expenses are deducted the balance of the fees and cost award is $44,401.01. This amount represents approximately 9% of Plaintiff's counsel's lodestar, and results in an effective hourly rate of $45.32. The agreed fee and costs are a significant compromised reduction from Plaintiff's counsel's lodestar, and are reasonable given the duration and contested nature of the litigation. Defendant does not contest the reasonableness of the fee award or the reimbursement of expenses as set forth herein.

> 2. **Because the Requested Fees are Already Significantly Less Than Plaintiffs' Counsel's Lodestar, No Further Reductions are Warranted**

While a court may determine whether the lodestar should be adjusted based on the circumstances of the case and the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974), abrogated on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1988), the Supreme Court has expressed a preference for the objective quality and predictable results from the lodestar approach over *Johnson's* open-endedness. *Perdue v. Kenny A.*, 559 U.S. 542, 544 (2010). As the Third Circuit explained, the:

> lodestar approach "achieved dominance," and in the 2010 case *Perdue v. Kenny A.* the Supreme Court spoke glowingly of the lodestar approach and its advantages as compared to the *Johnson* factors. 559 U.S. at 551 (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801, 122 S. Ct. 1817, 152 L. Ed. 2d 996 (2002)). The Court observed that the lodestar method has "several important virtues," most specifically that "the lodestar method is readily administrable" and, "unlike the Johnson approach," is objective in that it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id*. at 551-52.

> Yet the Court in *Perdue* still left room for *Johnson* factors to play a role in the attorney fee award decision: First, a district court should calculate the lodestar—"the number of hours worked multiplied by the prevailing hourly rate"—which carries a "strong presumption" of "reasonable[ness]" and "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Id*. at 543-44, 546, 552. After calculating the lodestar, the court may deviate from it, but only in the "rare

circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id*. at 543-44 (emphasis added).

*Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 128 (3d Cir. 2017) (emphasis added). In addition, a district court "cannot decrease a fee award based on factors not raised at all by the adverse party." *Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 81 (3d Cir. 2004).

The instant case does not present the "rare" circumstances in which the facts justify a deviation from Plaintiffs' counsel's already-reduced lodestar. *See Halleen v. Belk, Inc.*, No. 4:16-CV-00055-ALM, 2018 U.S. Dist. LEXIS 214015, *16 (E.D. Tex. Dec. 20, 2018) (finding no need to consider the Johnson factors where the parties agreed fee award request is significantly lower than the calculated lodestar amount). Further, here Defendant has agreed to the separately negotiated attorneys' fees. For these reasons, the Court should approve Plaintiffs' separately negotiated attorneys' fees and costs which Defendant does not oppose.

## V.     Conclusion

The proposed settlement is fair, reasonable, and consistent with the FLSA's statutory and judicial standards. It compensates the assistant managers for their off-the-clock work and resolves their claims efficiently.  The Parties respectfully request that the Court enter an order: (1) granting approval of the FLSA Settlement and its terms; (2) approving the service awards as set forth in the Settlement Agreement; and (3) approving the attorneys' fees, expenses, and costs for Plaintiffs' counsel outlined in the Settlement Agreement, Exhibit 1.

Dated June 12, 2025  
Boca Raton, Florida

s/Alan L. Quiles  
Alan L. Quiles  
Texas Bar No. 24075418  
aquiles@shavitzlaw.com  
Gregg I. Shavitz (admitted pro hac vice)  
gshavitz@shavitlzlaw.com  
SHAVITZ LAW GROUP, P.A.  
622 Banyan Trail, Suite 200

Boca Raton, Florida 33431
Tel: (561) 447-8888

**Attorneys for Plaintiff and the Collective**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on June 12, 2025, I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

*s/ Alan L. Quiles*
Alan L. Quiles

## SERVICE LIST

*Martinez v. Mobilelink*
**CASE NO.: 4:20-cv-01149**
**United States District Court for the Southern District of Texas**

Michael J. DePonte
**JACKSON LEWIS, P.C.**
500 N. Akard Street, Ste. 2500
Dallas, TX 75201
Tel: (214) 520-2400
Fax: (214) 520-2008
Michael.Deponte@jacksonlewis.com

Juliana C. Gaige
**JACKSON LEWIS, P.C.**
717 Texas Avenue, Suite 1700
Houston, TX 77002
Tel: (713) 650-0404
Fax: (713) 650-0405
Juliana.Gaige@jacksonlewis.com